United States District Court
Southern District of Texas
**ENTERED**
January 05, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAMUEL LEE JONES, JR., (TDCJ # 1787475), | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. H-23-51 |
| BOBBY LUMPKIN, *et al.,* | § § § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Samuel Lee Jones, Jr., (TDCJ # 1787475), is an inmate in the Texas

Department of Criminal Justice—Criminal Institutions Division.  Proceeding *pro se*

and *in forma pauperis*, Jones sues Bobby Lumpkin, Executive Director of TDCJ-

CID, and Michael Wheeler, TDCJ Access to Courts Supervisor, under 42 U.S.C.

§ 1983, alleging that they are violating his constitutional right of access to the courts

through deficiencies in the Wynne Unit law library's holdings and certain of its

policies concerning law library usage.  (Dkt. 1).  The Court dismissed the claims

against Lumpkin and ordered Wheeler to respond.  (Dkt. 11).  Wheeler answered the

complaint, (Dkt. 15), and filed a motion for summary judgment with extensive

exhibits.  (Dkt. 28).  Jones filed a response to the motion that also included extensive

exhibits.  (Dkt. 35).  Wheeler filed a reply, (Dkt. 37), and Jones filed a surreply.

(Dkt. 38). Having reviewed the motion, the response and replies, and all matters of record, the Court grants Wheeler's motion for summary judgment and dismisses Jones's action for the reasons explained below.

## I.   <u>BACKGROUND</u>

Because of the nature of Jones's access-to-courts claim, a discussion of his lengthy litigation history is necessary to an understanding of the Court's decision. In April 2012, a Texas jury found Jones guilty of aggravated assault with a deadly weapon on a witness informant in Dallas County Cause No. F11-14842. *See Jones v. State,* No. 05-12-0618-CR, 2013 WL 3717771 (Tex. App.—Dallas July 12, 2013, pet. ref'd). The Court of Appeals affirmed Jones's conviction and life sentence in July 2013. *Id.* The Texas Court of Criminal Appeals refused his petition for discretionary review on November 27, 2013. *See Jones v. State*, No. PD-1047-13 (Tex. Crim. App. Nov. 27, 2013). Jones did not seek review in the United States Supreme Court.

On May 12, 2014, Jones filed a state application for a writ of habeas corpus. *See* state-court habeas records, available in *Jones v. Stephens*, Civil No. 3:14-cv-3134-D (N.D. Tex.), at Dkt. 30. On May 29, 2014, the state habeas trial court found that Jones's application failed to comply with Texas Rule of Appellate Procedure 73.1, which sets a 50-page limit for memoranda that accompany a habeas application, and it recommended that Jones's application be dismissed. *Id.* at Dkt.

2

45.   On June 10, 2014, apparently in response to the state habeas trial court's findings, Jones filed a motion for leave to exceed the 50-page limitation. *Id.* On June 25, 2014, he filed objections to the state habeas trial court's findings of fact and conclusions of law, contending in part that the court should have stricken his memorandum rather than recommending dismissal. *Id.* at Dkt. 30-11.  On July 9, 2014, the Court of Criminal Appeals dismissed Jones's application based on his failure to comply with the requirements of Rule 73.1 *Id.* at Dkt. 30-7.

Rather than filing a new state habeas application that complied with the applicable rules, Jones filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the Northern District of Texas on July 21, 2014.  *Id.* at Dkt. 1. During the course of those proceedings, Jones cited the United States Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), as supporting his argument that the district court should excuse the procedural default that resulted in his failure to exhaust his state remedies. *See Jones*, Civil No. 3:14-cv-3134-D, at Dkts. 31, 36. On August 27, 2015, the district court dismissed Jones's petition without prejudice based on his failure to exhaust his state remedies. *See Jones v. Stephens,* No. 3:14-cv-3134-D, 2015 WL 5052296 (N.D. Tex. July 15, 2015), *report and recommendations adopted*, 2015 WL 5076802 (N.D. Tex. Aug. 27, 2015).  The district court also denied Jones's motion to stay the proceedings while he returned to state court, concluding that he had not shown good cause for failing to exhaust his

state remedies. *Id.* at \*2. Jones appealed the district court's ruling to the Fifth Circuit, which denied him a Certificate of Appealability. *See Jones v. Davis*, No. 15-10927, 2016 WL 11847751 (5th Cir. June 24, 2016).

While his appeal was pending in the Fifth Circuit, Jones returned to state court and filed a second application for a writ of habeas corpus on September 15, 2015. *See* state-court habeas records, available in *Jones v. Director*, No. 3:17-cv-1028-B (N.D. Tex.), at Dkt. 20-34. Along with the application, Jones submitted another memorandum that exceeded the 50-page limit of Rule 73.1. *Id.* at Dkt. 20-34 pp. 60-127. He asked the court to excuse him from the 50-page limit because he alleged that it was impossible for him, as a *pro se* litigant, to comply with that limit. *Id.* at Dkt. 20-34, p. 60. The state habeas trial court recommended that this second habeas application be dismissed for the failure to comply with Rule 73.1. *Id.* at Dkt. 20-35, p. 194. On November 25, 2015, the Court of Criminal Appeals dismissed Jones's second habeas application based on his violation of Rule 73.1. *Id.* at Dkts. 20-32, 20-33.

On December 16, 2015, Jones filed his third application for a state writ of habeas corpus, which finally complied with Rule 73.1. *Id.* at Dkt. 20-67, pp. 5-105. The State responded to the merits of Jones's claims. *Id.* at Dkt. 20-67, pp. 111-21. The state habeas trial court designated the issue of ineffective assistance of counsel and ordered a response from Jones's trial counsel. *Id.* at Dkt. 20-67, pp. 133-34.

The court then entered findings of fact and conclusions of law that addressed the merits of Jones's ineffective assistance of counsel claims and found that the remainder of his claims were either not cognizable in a habeas application or should have been raised on direct appeal. *Id.* at Dkt. 20-66, pp. 34-47. On March 29, 2017, the Court of Criminal Appeals denied Jones's third state habeas application without written order on findings of the trial court without a hearing. *Id.* at Dkt. 20-46.

On April 5, 2017, Jones filed a second petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the Northern District of Texas. *Id.* at Dkt. 3. This petition was dismissed with prejudice as untimely under the applicable statute of limitations. *See Jones v. Davis*, No. 3:17-cv-1028-B, 2018 WL 6928446 (N.D. Tex. Dec. 13, 2018), *report and recommendations adopted*, 2019 WL 95582 (N.D. Tex. Jan. 3, 2019). Jones's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) was denied. *See Jones*, No. 3:17-cv-1028-B, at Dkts. 43, 49. Jones also filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b), which was denied. *See Jones v. Davis*, No. 3:17-cv-1028-B, 2019 WL 5537754 (N.D. Tex. Oct. 25, 2019). Jones appealed the denial of both his petition and his Rule 60(b) motion. *Id.* at Dkts. 42, 55. The Fifth Circuit denied Jones a Certificate of Appealability on his petition. *See Jones v. Davis*, No. 19-11237, 2020 WL 2569355 (5th Cir. Apr. 28, 2020). The Fifth Circuit also affirmed the denial of

Jones's Rule 60(b) motion. *See Jones v. Lumpkin*, 22 F.4th 486 (5th Cir.), *cert. denied*, 143 S. Ct. 127 (2022).

While these appeals from his second federal habeas petition were pending in the Fifth Circuit, Jones filed a motion for relief from judgment under Rule 60(b) in his original federal habeas proceeding. *See Jones v. Stephens*, No. 3:14-cv-3134-B (N.D. Tex.), at Dkt. 65. In that motion, he argued that the United States Supreme Court decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), required the federal district court to excuse his initial failure to exhaust his state remedies and to consider his claims on their merits. *See Jones*, No. 3:14-cv-3134-B, at Dkt. 65. Jones alleged that his failure to cite these cases originally was "due to an inadequate prison law library not hav[ing] the *Trevino* and *Martinez* case law when he presented his original timely filed mixed habeas to this Court." *Id.* at Dkt. 65, p. 2 n.1. The district court denied the motion. *See Jones v. Davis*, No. 3:14-cv-3134-B, 2022 WL 487925 (N.D. Tex. Feb. 17, 2022). The Fifth Circuit denied Jones's request for a Certificate of Appealability. *See Jones v. Lumpkin*, No. 22-10281, 2022 WL 20678990 (5th Cir. Sept. 22, 2022).

On December 15, 2022, Jones filed this civil rights action against Lumpkin[1] and Wheeler under 42 U.S.C. § 1983. (Dkt. 1). In his complaint, Jones alleges that

---

[1]As noted above, the Court previously dismissed Lumpkin from this case. (Dkt. 11).

Wheeler oversees TDCJ's law libraries. (*Id.*). Jones alleges that the Wynne Unit law library does not contain "up-to-date state, federal, and Supreme Court reporters" and that "there are no up-to-date West Texas Digest[s], and there are no Supreme Court Digest[s] or table of cases at all." (Dkt. 1-1, p. 2). Jones also alleges that the Wynne Unit law library "do[es] not have a person trained in the law working in the law libraries to assist prisoners [to] conduct legal research, prepare and file a habeas petition and/or civil complaint." (*Id.*). In addition, Jones challenges certain TDCJ rules that prohibit inmates from talking to and consulting with each other in the library while they are conducting legal research, contending that these rules prevent inmates from helping each other with research and learning from each other. (*Id.* at 3-4).

Jones alleges that the missing "on-the-shelf" books and the restrictions on inmate communication render the Wynne Unit law library constitutionally deficient under *Bounds v. Smith*, 430 U.S. 817 (1997). He alleges that because of these deficiencies, he was unable to locate and cite the cases of *Martinez v. Ryan*, 566 U.S. 1 (2012), *Trevino v. Thaler*, 569 U.S. 413 (2013), and *Buck v. Davis*, 580 U.S. 100 (2017), which he asserts are controlling legal precedent that would have altered the outcome of his original state habeas application and his 2014 federal habeas petition. (Dkts. 1, p. 4; 1-1, p. 4-5). He seeks injunctive relief to require TDCJ to update the Wynne Unit law library holdings and to prevent TDCJ from enforcing its rules about

7

inmates assisting other inmates with legal research. (Dkt. 1, p. 4). He also asks the Court to reinstate his postconviction proceedings and restart the statute of limitations. (*Id.*).

Wheeler responded to Jones's complaint with a motion for summary judgment that raises a number of defenses, disputes Jones's allegations about the library's holdings, and asserts that Jones does not allege facts showing that he suffered an actual injury that would entitle him to relief on an access-to-courts claim. (Dkt. 28). Jones filed a timely response to the motion. (Dkt. 35). Wheeler filed a reply in which he raised a further defense to Jones's claims. (Dkt. 37). Jones filed a timely surreply that responded to the new defense. (Dkt. 38).

## II.   APPLICABLE LAW

### A.   Actions Under 42 U.S.C. § 1983

Jones sues Wheeler under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18

8

F.4th 769, 775 (5th Cir. 2021) (per curiam).  The dispute in this case focuses on the first element:  whether Wheeler violated Jones's constitutional rights.

**B.**   **Summary-Judgment Standard**

Wheeler responded to Jones's complaint with a motion for summary judgment.  "Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)).  "A fact is material if its resolution could affect the outcome of the action."  *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010)).  "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

When considering a motion for summary judgment, the Court must view all evidence and draw all inferences "in the light most favorable to the [nonmoving] party."  *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Dyer*, 964 F.3d at 380.  When both parties have submitted

summary-judgment evidence that tends to show conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995). However, the Court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In addition, if record evidence clearly contradicts the plaintiff's version of events, the Court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez,* 750 F. App'x 248, 253-54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). After viewing the evidence in the light most favorable to the nonmoving party, summary judgment may be granted only if no genuine disputes of fact exist and no reasonable jury could return a verdict for the nonmoving party. *See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund,* 218 F.3d 392, 399 (5th Cir. 2000).

## C.   *Pro Se* Pleadings

Because Jones proceeds *pro se*, the Court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam). But even under this lenient standard, *pro se* litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.,* 767 F.3d 475, 484 (5th Cir. 2014)

(quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013)).

"*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

## III.  **DISCUSSION**

The parties agree that inmates have a fundamental constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right of access "is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974). To ensure that the right of access is protected, prison authorities must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis*, 518 U.S. at 351 (citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).

But the right of access does not "encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). "In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental

11

constitutional rights to the courts.'" *Lewis,* 518 U.S. at 351 (quoting *Bounds,* 430 U.S. at 825). Because the focus is on only *access* to the courts, prison law libraries are not required to provide inmates with the ability "to *litigate effectively* once in court." *Id.* at 353 (emphasis in original). The Constitution "does not guarantee inmates the wherewithal to transform themselves into litigating engines." *Id.* at 355. Instead, prisons must only provide, or not interfere with, inmates' access to the courts. *Id.*

Because the Constitution does not provide a "freestanding right to a law library or legal assistance," an inmate claiming a violation of the right of access must demonstrate both that the prison library facilities or legal assistance is inadequate and that these inadequacies caused him a "relevant actual injury." *Id.* at 349, 351. To prove the "relevant actual injury" element, the inmate must show that his ability to pursue a nonfrivolous, or at least arguable, legal claim was hindered by the defendant's actions. *See Christopher v. Harbury,* 536 U.S. 403, 415 (2002); *see also Alexander v. Tex. Dep't of Crim. Just.,* 951 F.3d 236, 239 (5th Cir. 2020) (per curiam) (affirming the denial of an access-to-courts claim because the plaintiff's underlying claim was frivolous); *Ruiz v. United States,* 160 F.3d 273, 275 (5th Cir. 1998) (per curiam) (to show actual injury, a prisoner must show that he was prevented from presenting a meritorious legal issue); *McDonald v. Steward,* 132 F.3d 225, 230-31 (5th Cir. 1998) (to prevail on an access-to-courts claim, the

prisoner must show "that his position as a litigant was prejudiced by his denial of access to the courts"). In the absence of evidence of that the defendant's actions actually hindered the inmate's efforts to pursue a nonfrivolous legal claim, an inmate has no standing to pursue a claim for a violation of his right of access to the courts. *See Chriceol v. Phillips,* 169 F.3d 313, 317 (5th Cir. 1999) (per curiam); *see also Lewis*, 518 U.S. at 348-49 & n.3 ("Depriving someone of a frivolous claim . . . deprives him of nothing at all.").

In his complaint, Jones alleges that Wheeler has violated his constitutional right of access to the courts both by failing to ensure that the library provides up-to-date legal materials in its holdings and by imposing unreasonable rules that restrict the inmates' use of the library. Jones alleges that he suffered an actual injury because he was prevented from learning of the decisions in *Trevino v. Thaler*, 569 U.S. 413 (2013), and *Buck v. Davis*, 580 U.S. 100 (2017), and presenting them in support of his state and federal habeas petitions. Wheeler raises a number of bases for dismissing Jones's claims, to which Jones has responded. However, because Jones's allegations about the library's rules do not state a claim for a constitutional violation and because he has failed to present any evidence demonstrating that he suffered an actual injury due to Wheeler's actions, the Court dismisses this action on those grounds and does not reach Wheeler's other arguments.

### A.   Allegations Concerning Law Library Rules

Jones alleges that Wheeler has violated his right of access to the courts by enforcing certain law library policies and rules concerning inmates consulting with each other. (Dkt. 1-1, pp. 2-3). Specifically, Jones alleges that the Wynne Unit law library rules "prohibit prisoners to talk and help each other conduct legal research and prepare our habeas petition and/or civil complaint." (*Id.* at 3). He alleges that while prisoners can submit a request to work together, they are not permitted to check out legal books during the time they are working together. (*Id.* at 3-4). He further alleges that the 30-minute time permitted for inmates to work together is insufficient for them to actually assist each other. (*Id.* at 4). He alleges that this prevents inmates from accessing the courts by preventing them from helping each other and learning from each other. (*Id.*).

Even taking these allegations as true, they do not state a claim for a violation of the right of access to the courts. The Constitution does not require prisons to permit inmates to consult with each other concerning the law or legal claims, and claims that inmates are prohibited from talking to each other about legal matters in the law library have been dismissed as frivolous. *See Hall v. Hoke*, 471 F. App'x 269, 270 (5th Cir.), *cert. denied*, 568 U.S. 1013 (2012). Because Jones's allegations concerning the Wynne Unit's rules concerning talking or consultations between inmates in the law library do not allege facts that establish a constitutional violation,

14

he has not alleged a viable § 1983 claim.  Wheeler is entitled to summary judgment in his favor on these claims.

## B.     Allegation of Deficient Library Holdings

Jones also alleges that the Wynne Unit law library does not maintain "on-the-shelf" copies of up-to-date Supreme Court case law, up-to-date Texas Digests, or other current research materials.  (Dkts. 1, p. 4; 1-1 pp. 2, 4).  He alleges that as of 2023, the Wynne Unit law library had "on-the-shelf" copies of Supreme Court reporters current only through 2007.  (Dkt. 1-1, p. 4).  He alleges similar deficiencies in Federal Reporters and Texas case law.  (*Id.*).  He also alleges that the law library is not staffed by anyone who is trained in legal research and that the workers are often unable to pull the proper volumes and books even when inmates provide them with a proper legal citation.  (*Id.* at 2-3).  Jones contends that these deficiencies in both "on-the-shelf" law library materials and in the available legal assistance establish that the Wynne Unit law library does not meet constitutional standards.

In response, Wheeler points to evidence that the Wynne Unit law library provides more current legal resources through electronic databases, and he contends that Jones's assertion about the limited holdings is disingenuous because Jones has access to recent legal materials—just not in book form.  (Dkt. 28, p. 19 (citing Dkt. 1-2, pp. 69-70)).  Wheeler points out that Jones's own evidence shows that current legal materials are available "via LexisNexis upon I-60 request."  (*Id.* at 20 (citing

Dkt. 9, p. 77)).  Wheeler also asserts that the I-60s filed by Jones demonstrate that law library staff members have provided him with many of the cases he has requested.  (*Id.* at 21-22).

But the totality of the summary judgment evidence demonstrates that fact questions exist as to whether the Wynne Unit law library is constitutionally deficient. While the Wynne Unit law library may subscribe to electronic resources that provide access to recent legal research materials, these electronic resources are not available directly to inmates; instead, inmates must submit requests to law library staff to have recent legal materials printed for them.  (Dkt. 28, pp. 21-22).  Jones has submitted evidence tending to show that when inmates submit requests for recent materials from the electronic database and cite the proper volume and page numbers, law library staff is frequently unable to either locate or access the requested materials. (Dkt. 1-1, p. 4).  Jones's affidavit and library material request sheets, as well as affidavits from other inmates, show that many requested recent cases were not provided, either because the citation was deemed "incomplete" or because the requested case was "not in holdings."  (Dkt. 1-2, pp. 38-46, 53-65).

The Supreme Court has held that prisons may provide access to courts by providing either adequate law libraries or adequate legal assistance to inmates.  *See Lewis*, 518 U.S. at 351.  The summary judgment evidence in this case raises genuine issues of material fact as to whether the Wynne Unit law library is meeting this

standard.   A law library subscribing to electronic legal research materials that inmates are unable to access, either directly or through properly trained library staff, is not adequate.   And the summary judgment evidence raises genuine issues of fact as to whether recent legal materials are actually available to inmates.   These fact questions are sufficient to preclude a finding that, as a matter of law, the Wynne Unit law library meets constitutional standards.

### C.   Allegations of Actual Injury

Even though disputed issues of fact exist concerning whether the Wynne Unit law library is constitutionally adequate, Wheeler is nevertheless entitled to summary judgment because the evidence does not show that Jones suffered an actual injury due to Wheeler's actions.

Jones alleges that he suffered an actual injury because he was unable to learn of the Supreme Court cases of *Trevino v. Thaler*, 569 U.S. 413 (2013), and *Buck v. Davis*, 580 U.S. 100 (2017), in time to cite them in his state habeas proceedings and prior federal habeas proceedings.   He alleges that had he been able to cite these cases, the outcome of his state and federal habeas proceedings would have been different.   However, neither *Trevino* nor *Buck* is applicable to Jones's case, and therefore he has not shown that Wheeler hindered his ability to pursue a nonfrivolous, or at least arguable, legal claim so as to demonstrate an actual injury.

1. **The *Trevino* Case**

The Supreme Court's decision in *Trevino* extended the holding of *Martinez v. Ryan*, 566 U.S. 1 (2012), to Texas inmates. *Trevino*, 569 U.S. at 417. In *Martinez*, a state prisoner believed that he received ineffective assistance of counsel during his trial. *Id.* at 5. State law prohibited Martinez from raising this claim on direct appeal, and appointed postconviction counsel failed to raise the claim in Martinez's initial state application for postconviction relief. *Id.* at 6. Martinez raised his ineffective-assistance-of-trial-counsel claim for the first time in his second state application for postconviction relief, but the state court denied the claim as procedurally barred because, under state law, it should have been raised in his first postconviction application. *Id.* at 6-7.

On federal habeas review, Martinez acknowledged that his ineffective-assistance-of-trial-counsel claim was procedurally defaulted because relief had been denied based on his violation of state procedural rules. *Id.* at 7. Recognizing that he would have to show cause and prejudice to avoid that procedural default, Martinez argued that the ineffective assistance of his postconviction counsel should be considered sufficient "cause" for purposes of the cause-and-prejudice analysis required to excuse the procedural default. *Id.* The Supreme Court agreed, holding that the "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective

18

assistance at trial." *Id.* at 9. The Supreme Court also held that cause could exist if the state required a prisoner to raise ineffective-assistance-of-counsel claims on postconviction review but did not appoint counsel for the prisoner on postconviction review. *Id.* at 14. However, the Supreme Court cautioned that not every procedural default may be excused under these circumstances. *Id.* Instead, a procedural default may be excused "only when the prisoner is impeded or obstructed in complying with State's established procedures." *Id.* Moreover, the Supreme Court held only that federal habeas review is not barred under those circumstances; the Court did not hold that a district court is required to excuse the default. *Id.* at 17.

Jones argues that had he been aware of the *Trevino* decision, he could have cited it during his state habeas proceedings. He contends that had he cited *Trevino*, the state habeas court would have been required to overlook his procedural default and appoint counsel to assist him in the state postconviction proceedings. (Dkt. 8, p. 3). Alternatively, Jones contends that if he had cited *Trevino* in his first federal habeas petition, the district court would have been "required" to excuse his state procedural default. (Dkt. 35, p. 13).

Neither contention is correct. The *Trevino* decision does not require a state to appoint counsel for a prisoner in state-court postconviction proceedings, nor does it require a state court to overlook or excuse procedural defaults in state-court postconviction proceedings. And while the *Trevino* decision permits—but does not

19

require—a federal court to excuse a state procedural default if the petitioner can show that he was impeded in or obstructed from complying with state procedural rules by circumstances outside of his control, Jones does not allege facts showing that he was impeded in or obstructed from complying with Texas's procedural rules. Instead, he alleges only that he was initially unaware of the rule on page limitations. But the record shows that once Jones learned of the rule, he made no effort to comply with it. Instead, he abandoned his state habeas remedies and pursued his claims in federal court. Nothing in the *Trevino* decision permits a litigant to violate the state's procedural rules, file his claims in federal court, and then rely on his own ignorance to argue that the federal court should excuse his compliance with the state's rules.

Jones also contends that if he had known about the *Trevino* decision in time to cite it in his second federal habeas petition, the district court would have been "required" to excuse his failure to file his second federal habeas petition within the limitations period. This contention is also incorrect. The *Trevino* decision supports excusing a prisoner only from a procedural default the occurred in state habeas proceedings; it does not excuse an inmate's failure to comply with federal procedures. *See e.g., Shank v. Vannoy*, No. 16-30994, 2017 WL 6029846, at *2 (5th Cir. Oct. 26, 2017) (per curiam) ("*Martinez* does not apply to § 2244(d)'s one-year limitations period."); *see also Lombardo v. United States*, 860 F.3d 547, 557-58 (7th Cir. 2017) (noting that *Martinez* "says nothing about excusing [federal] procedural

requirement[s] for either state or federal prisoners"); *Arthur v. Thomas*, 739 F.3d 611, 630-31 (11th Cir. 2014) ("[T]he *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period."); *Dickerson v. Davis*, No. 4:17-cv-071-A, 2018 WL 2431846, at *3 (N.D. Tex. May 30, 2018) ("[T]he *Martinez* line of cases does not apply to the AEDPA's statute of limitations and cannot be invoked to establish eligibility for equitable tolling."). Jones's claim that the *Trevino* decision would have required the district court to excuse his failure to file his federal petition within the federal limitations period misreads and misapplies that case.

The *Trevino* decision does not require a state court to appoint counsel for postconviction proceedings, does not require the federal court to excuse a state procedural default caused by circumstances within the inmate's control, and does not permit a federal court to excuse compliance with the federal limitations period. Because the *Trevino* decision is irrelevant to the facts in Jones's case, he has not shown that his inability to find and cite the *Trevino* decision prevented him from presenting a nonfrivolous legal claim in either his state or federal habeas proceedings. As a result, Jones cannot show that he suffered any relevant actual injury due to his inability to locate the *Trevino* case, and he cannot prevail on an access to courts claim on this basis as a matter of law.

21

### 2.    The *Buck* Case

Like the decision in *Trevino*, the Supreme Court's decision in *Buck* is not relevant to Jones's claims and so cannot support a claim of actual injury.  Buck's federal habeas petition was filed and denied before the *Trevino* decision was issued. *Buck*, 580 U.S. at 104-05.  After *Trevino* was issued, Buck filed a motion under Federal Rule of Civil Procedure 60(b), alleging that he was entitled to federal habeas review of his procedurally defaulted state habeas claims because the denial of federal review would be a miscarriage of justice.  *Id.*  The district court denied relief, and the Fifth Circuit refused to issue a Certificate of Appealability.  *Id.* at 105.  The Supreme Court reversed solely on the ground that the Fifth Circuit had improperly considered the merits of Buck's underlying claims in denying him a Certificate of Appealability.  *Id.* at 116-17.  And while the Supreme Court did state that the *Trevino* case could be applied retroactively to excuse Buck's procedural default, it did so only because the State had waived the retroactivity argument.  *Id.* at 127-28.

Jones alleges that had he known about the *Buck* decision, he could have cited it in his two Rule 60(b) motions and the district court would have "reopened the judgment per *Buck*" so that he could raise his *Trevino* claim.  (Dkt. 8, p. 3). However, nothing in the records before this Court shows that the Fifth Circuit improperly considered the merits of Jones's claims when it denied him a Certificate of Appealability in either of his appeals, and the *Buck* decision stands for no other

22

proposition of law relevant to Jones's case. Because the *Buck* decision is irrelevant

to the facts in Jones's case, he has not shown that his inability to find and cite that

decision prevented him from presenting a nonfrivolous legal claim in either his state

or federal habeas proceedings. As a result, Jones cannot show that he suffered any

relevant actual injury due to his inability to locate the *Buck* case, and he cannot

prevail on an access to courts claim on this basis as a matter of law.

In sum, Jones has failed to carry his burden to show that genuine disputes of

material fact exist relevant to the question of whether he suffered an actual injury

because of the alleged inadequacy of the Wynne Unit law library. Absent evidence

of an actual injury, Jones lacks standing to pursue a claim of denial of access to the

courts. *See, e.g., Ruiz*, 160 F.3d at 275 ("[W]e hold that without proving an actual

injury, a prisoner cannot prevail on an access-to-the-courts claim."); *Herrera v.

Texas*, No. SA-21-cv-1266-XR, 2022 WL 817816, at *9 (W.D. Tex. Mar. 16, 2022)

("In the absence of a showing of an actual injury, an inmate lacks standing to pursue

a claim of denial of access to the courts."); *Weathers v. Doe*, No. 05-54, 2008 WL

1924231, at *2 (S.D. Tex. Apr. 29, 2008). Wheeler is entitled to summary judgment

in his favor on this basis.

### D.   Allegations Regarding Access to Courts

Finally, Jones's arguments reflect a fundamental misunderstanding of the

basis for a claim of a violation of the right of access to the courts. The Constitution

protects the right of *access* to the courts; it does not guarantee a litigant success in court proceedings, nor does it require prisons to provide inmates with all the resources necessary to turn them into effective litigators.

Publicly available court records show that Jones has filed no fewer than three state habeas applications, no fewer than two state mandamus petitions, two federal habeas petitions, multiple appeals to the Fifth Circuit, multiple post-judgment motions, and this civil rights action. Jones has supported these pleadings with literally thousands of pages of memoranda, letters, affidavits, and notices, all of which contain extensive citations to cases and statutes. While Jones has not been successful in obtaining the relief he seeks, he has clearly had every opportunity to pursue every legal remedy available, and he has done so. He cannot show, in light of his multiple filings and voluminous pleadings, that any action taken by Wheeler or anyone else at the Wynne Unit law library has interfered with his right of access to the courts. *See, e.g., Chriceol*, 169 F.3d at 317 (finding no record evidence of an actual injury on summary judgment when the plaintiff successfully filed his complaint); *McBarron v. Fed. Bureau of Prisons*, 332 F. App'x 961, 964 (5th Cir. 2009) (per curiam) (affirming the dismissal of an access-to-courts claim for failure to state a claim when the record showed that the plaintiff had successfully filed his complaint).

24

Having failed to meet his burden on summary judgment, Jones is not entitled to the relief he seeks.  Wheeler is entitled to entry of summary judgment in his favor.

## IV. <u>CONCLUSION</u>

Based on the above, the Court **ORDERS** as follows:

1. Wheeler's motion for summary judgment, (Dkt. 28), is **GRANTED**.

2. Jones's action is **DISMISSED with prejudice**.

3. Final judgment will be separately entered.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on _____*Jan 5*_____, 2024.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE

25